## DÍAZ v. THE PEOPLE ET AL.

### APPEAL from the District Court of Arecibo.

#### No. 463.—Decided January 19, 1911.

ACTION TO RECOVER—SUIT AGAINST THE PEOPLE OF PORTO RICO—JURISDICTION—CONSENT.—It has been repeatedly held by this court that The People of Porto Rico can be sued without its consent, and therefore the courts have jurisdiction to take cognizance of actions against The People where said consent has not been given.

ID.—IDENTIFICATION OF THE ESTATE—DESCRIPTION OF THE ESTATE IN THE COMPLAINT.—For the purpose of recovery it is an indispensable condition that the plaintiff should specify in the complaint, with due certainty and clearness, the thing claimed by him, and prove during the trial the title and identity thereof.

ID.—RECOVERY OF AN ESTATE AS PART OF ANOTHER—DESCRIPTION.—To comply with the provision of section 125 of the Code of Civil Procedure, a description of the estate whereof the land claimed formed a constituent part is not sufficient, but the latter must be described in such a manner as to insure its identification, in case of the execution of a judgment, without the necessity of further explanations, the thing sought to be recovered not being the entire estate but the portion detained, and the action for recovery should be exercised against the possessor of said land.

ID.—BOUNDARIES OF THE ESTATE—LACK OF IDENTIFICATION.—An action to recover cannot succeed where the complaint fails to specify the boundaries or limits within which the land claimed is enclosed, nor can said boundaries be deter-

mined by the outcome of the evidence taken at the trial, in which the identity of the entire estate was sought to be established, instead of that of the portion claimed.

Id.—Consideration of the Evidence—Affirmation of the Judgment.—The identity of the land sought to be recovered not having been proven, and the lower court not having been influenced in its action by prejudice, partiality, or passion, nor erred in considering the evidence, the judgment appealed from should be affirmed.

The facts are stated in the opinion.

*Mr. José G. Torres* for appellant.

*Messrs. Henry M. Hoyt, Attorney General, Luis Campillo, fiscal,* and *J. H. Brown, Acting Attorney General,* for respondents.

Mr. Chief Justice Hernández delivered the opinion of the court.

On January 13, 1909, Arturo Díaz Valcárcel brought an action in the District Court of Arecibo against The People of Porto Rico and Wenceslao Borda, Jr., for the recovery of lands, alleging as grounds the following facts:

"1. That he is the owner of a rural estate situated in *barrio* 'Islote,' municipality of Arecibo, consisting of 407.56 *cuerdas* of level land, equal to 160 hectares, 18 ares, and 84 centares, with a frame house thereon; bounded on the north by lands belonging to Francisco Jiménez, Rufino Pérez, and Francisco Torres, formerly, and afterwards to Rosa María Jiménez and Rufino Pérez; on the east by lands belonging to Francisco Jiménez, formerly, and afterwards to Justo Torres y Atiles, Donato Maldonado, Felipe Gómez, and Dulcidio Alvarez; on the west by lands of Rufino Pérez and the 'cortadera' (bulrushes) of 'Caño Tiburones,' formerly, and, afterwards, to Tomás Boneta and Rufino Pérez; and on the south by 'Caño Tiburones.' Said estate was acquired by the plaintiff during his marriage with Serafina Curbelo, through award made in his favor by decree of September 9, 1901, in execution proceedings instituted by the 'Banco Territorial y Agrícola' in the District Court of Arecibo against Julián Muro and continued against Monserrate Colón and Nieves Girault; and upon the death of Serafina Curbelo, on November 3, 1906, it was awarded to said plaintiff in payment of his portion in the conjugal partnership and of the debts against the latter, according to the deed of partition of Serafina Curbelo's property, executed May 8, 1907.

"2. That the above-described estate was measured by Surveyor

Arturo Puig, who drew a topographical sketch thereof wherein is shown the true area of said estate as it appears recorded in the registry of property, in which sketch, drawn in July of 1895, are shown also, by conventional marks, the land dedicated to sugar-cane and cocoanut palms, thus evincing that said land was entirely cultivated at that time, the last 50 *cuerdas* having been drained since the preceding year—1894—when Encarnación Colón, who then possessed it, was exempted from paying taxes, under article 5 of the regulations for the collection of the land tax.

''3. That although the first records of the estate made in the registry assigned it 305 *cuerdas,* such measurement was erroneous, for its boundaries embrace an area of 407.56 *cuerdas,* according to the sketch drawn in 1895 by' Arturo Puig, which measurement was verified by another survey made, after citation of the contiguous landowners, by the mathematician, Eduardo Rosso y Gil de Lamadrid, in view of which and of an instrument executed on January 31, 1898, before Notary Sebastián Muñoz, the proper correction was made in the Registry of Property of Arecibo, when the aforesaid area of 407.56 *cuerdas* was assigned the estate in the tenth record thereof.

''4. That although the possession of the estate in question by the plaintiff and the latter's dominion titles reach back only to the year' 1901, when it was acquired by the plaintiff through adjudication in execution proceedings instituted by the 'Banco Territorial,' the first record of said estate was made more than 20 years ago, and its possession reaches back to a very remote period—more than a century—during all which time neither the Government of Porto Rico nor any person whatsoever had set up any claim tending to nullify the dominion titles to said lands, or to interrupt the legitimate possession thereof.

''5. That thus matters stood when, in 1908, the Legislative Assembly of Porto Rico passed a joint resolution authorizing the Commissioner of the Interior to extend to 40 years a certain contract of lease of public lands, entered into with Don Wenceslao Borda on September 15, 1907, and both in said joint resolution and in the contract of lease all the swamp lands, not drained and cultivated, belonging to The People of Porto Rico and situated in the districts of Arecibo and Manatí, consisting of a parcel of land of 6,000 *cuerdas,* more or less, generally known by the name of 'Caño o Laguna de los Tiburones,' are transferred to Wenceslao Borda under the terms set forth in said contract of lease.

''6. That by virtue of the joint resolution to which reference has been made, and while the plaintiff was absent from the Island, The

People of Porto Rico, through its *fiscal* in Arecibo and employes of the Commissioner of the Interior's office, appropriated to itself a large portion of lands belonging to the aforesaid estate and delivered the same to Wenceslao Borda, without instituting condemnation proceedings against the plaintiff, or giving him notice of any decision in the premises.

"7. That, according to a sketch prepared in the office of the Commissioner of the Interior, only 147.66 *cuerdas* of land situated in *barrio* 'Islote' of Arecibo, confining with the 'Caño de Tiburones,' are recognized as belonging to him, the remainder of the estate, amounting to 259.90 *cuerdas* on the south and east thereof, having been appropriated by The People of Porto Rico and delivered to the lessee, Wenceslao Borda.

"8. That the land thus appropriated by The People of Porto Rico is the exclusive property of the plaintiff by virtue of his recorded dominion titles and the uninterrupted possession thereof for more than 100 years. But even admitting that The People of Porto Rico could claim a right to part of these lands, said part could never be held to be included in the grant made to Borda, which refers to swamp lands neither drained nor cultivated, whereas the lands in question not only are entirely drained, but have been under cultivation for more than 10 years."

The complaint closes with the prayer that, without prejudice to the plaintiff's right to recover damages, it be adjudged that the lands appropriated by The People of Porto Rico on the south and west of the hereinbefore-described estate and leased to Wenceslao Borda, belong to the plaintiff, and that the defendants be accordingly condemned to the delivery or restitution of said lands and payment of costs, should they oppose the complaint.

In their answer to the complaint The People of Porto Rico and Wenceslao Borda denied the facts alleged under paragraphs 1, 2, 3, 4, 6, and 8 of said complaint, and admitted those alleged under paragraph 5 and subdivision 1 of paragraph 7, while denying those set forth in subdivision 2 of the latter.

A day having been set for the hearing, after examining the evidence submitted by the plaintiff's representative, coun-

sel for the defendant moved that judgment be rendered in their favor, based on paragraph 5 of section 192 of the Code of Civil Procedure, and, among other grounds, alleged the failure to identify the estate the recovery whereof is sought. Said motion having been sustained, judgment was rendered on May 11, 1909, dismissing the complaint brought by Arturo Díaz Valcárcel, without special imposition of costs, and from said judgment the plaintiff took an appeal which, after the written and oral arguments of both parties, is now submitted to our consideration.

The respondent, in contesting the appeal, among other pleas has set up that of lack of jurisdiction on the part of the Arecibo court to take cognizance of the matter, inasmuch as The People of Porto Rico cannot be sued without its consent, and such consent has not been given in the present case.

The plea to the jurisdiction being peremptory should be disposed of at the outset,·and we, of course, are of the opinion that The People of Porto Rico may be sued without its consent, as has been held by us in the cases of Rosaly, of Juan Z. Rodríguez, of the Estate of José Fernández, and of Casimiro A. Rivera, all against The People of Porto Rico, decided, respectively, on June 14, 17, and 18, and December 7, 1910. To these cases we refer and proceed to examine the appeal upon its merits.

We have heretofore stated in deciding, on May 10, 1902, the case of *Bianchi* v. *The Municipal Corporation of Añasco*, that, for the purposes of recovery, the plaintiff must necessarily specify in the complaint with due certainty and clearness the thing claimed by him, and prove during the trial the title and identity thereof; and in conformity with the aforesaid doctrine, section 125 of the Code of Civil Procedure provides that in an action for the recovery of real property it must be described in the complaint with such certainty as to enable an officer upon execution to identify it.

In the sixth averment of the complaint, as we have already stated, the plaintiff alleges that The People of Porto Rico,

through its *fiscal* in Arecibo and employes of the Commissioner of the Interior's office, had appropriated to itself a large portion of lands belonging to the estate of 407.56 *cuerdas,* described in the first statement of facts, and delivered the same to Wenceslao Borda; and in the seventh statement he explains that the land thus seized consisted of 259.90 *cuerdas,* situated on the south and west of the aforesaid estate.

As we see, the land claimed is not specified in the complaint, with the boundaries necessary to its identification, and were the complaint to be sustained and the restitution and delivery of said land decreed, no officer would be able to execute the judgment.

To comply with the provision of section 125 of the Code of Civil Procedure, a description of the estate whereof the land claimed formed a constituent part is not sufficient, but the latter must be described in such a manner as to insure its identification, in case of the execution of a judgment, without the necessity of further explanations, the thing sought to be recovered not being the entire estate, but the portion detained, and the action for recovery should be exercised against the possessor of said land.

It may happen, as in the present case, that the identification of the entire estate of which the land detained was formerly a constituent portion, as also the title thereto, may bear a very close relation to the identification and ownership of the land detained, but this fact does not exempt from compliance with the provisions of section 125 of the Code of Civil Procedure.

Apart from the defective form of the complaint, if we enter upon a comparative examination of the various probatory elements brought to the trial by the plaintiff, we would still be unable to gain exact information as to which land constitutes the subject matter of the action of recovery, the confusion being further increased from the fact that while in the complaint the land claimed is assigned an area

of 259.90 *cuerdas,* said area becomes vague and indefinite after hearing the evidence, as we proceed to show:

Of the witnesses examined at the request of the plaintiff, Cándido Jiménez testifies that a commission sent out by the Commissioner of the Interior traced lines and fenced the estate of Arturo Díaz, the fence cutting off at least one-half of the estate, and delivered to Borda the land comprised between said fence and the "Caño de Tiburones"; José Carpio Reyes says that Borda retained some lands by means of a wire fence placed almost along the middle of the estate of Arturo Díaz, and he reckons that between the fence and the "Caño de Tiburones" there may be some 40, 50, or 60 *cuerdas* which were formerly utilized by Arturo Díaz; Francisco Pérez states that between the fence and the "caño" he calculates there may be some 30 *cuerdas,* more or less, belonging to Arturo Díaz; Ramón Nonato Maldonado deposes that a piece of land was taken from Arturo Díaz and delivered to Borda, said land having been separated from the rest of the estate by means of a wire fence; and Arturo Díaz Valcárcel himself declares that the area of the land taken from him amounts to 200 and odd *cuerdas.*

With such probatory elements it is impossible to determine the extent of the land whereof Arturo Díaz claims the ownership.

But the fact is that, besides the impossibility of determining by such probatory elements the superficial extent of the land presumed to have been detained, the complaint fails to specify the boundaries or limits within which said land is enclosed, nor can these be determined from the evidence taken at the trial, in which the plaintiff was more bent upon proving the identity of the entire estate than that of the land detained. The testimony of the witness, José Carpio Reyes, to the effect that the wire fence runs from south to west and that Borda possesses the land lying between Boneta's and the wire fence, and also the one lying between the fence and the "caño"; the statement of the witness,

Francisco Pérez, that when delivering the lands to Borda two *cuerdas,* more or less, had been taken from him, along which the fence was started, describing therefrom a curve in an upward direction, and taking from Arturo Díaz the whole piece of the "cortadera" (bulrushes) down to the "caño"; and the testimony of Ramón Nonato Maldonado, who asserts that a piece of land was taken from Arturo Díaz, which Borda now possesses, by placing wires on the estate of Arturo Díaz at the edge of the "cortadera," are insufficient to constitute proof of the identity of the land detained, as described by Arturo Díaz in his testimony that the land which he seeks to recover confines on the north with the rest of the estate from which it is separated by a wire fence; on the south with "Caño de Tiburones"; on the west with lands belonging to Rufino Pérez, Tomás Boneta and the "cortadera" (bulrushes); and on the east with lands of José Jiménez.

We do not find that the lower court has been influenced in its conclusion by prejudice, partiality, or passion, nor that it has committed manifest error in considering the evidence taken at the instance of the plaintiff, upon whom lies the burden of proof; wherefore, we regard the judgment appealed from to be in accordance with the law, inasmuch as the identity of the land, the recovery whereof is sought, has not been established.

For the foregoing reasons the judgment rendered by the District Court of Arecibo on May 11, 1909, dismissing the complaint of Arturo Díaz Valcárcel and from which this appeal has been taken should be affirmed, without special imposition of costs.

*Affirmed.*

Justices Wolf and del Toro concurred.

Mr. Justice MacLeary signed, stating that he agreed with the judgment and opinion except as to what relates to jurisdiction, he holding that The People of Porto Rico cannot be sued without its consent.